The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar, Defendants' brief on appeal and argument of Defendants' counsel. Plaintiff filed a Form 44 but did not file a brief and did not appear when her case was regularly and duly called for argument. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award. Accordingly, the Opinion and Award by Deputy Commissioner Lorrie L. Dollar is affirmed.
* * * * * * * * * * *
This case was originally heard before Deputy Commissioner Dollar in Charlotte on 9 February 1995. Upon receipt of stipulated medical reports and defendants' written contentions, the record was ordered closed.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the parties on January 5, 1994, which is the date of the injury giving rise to this claim.
2. Travelers Insurance Company was the carrier on the risk.
3. At the hearing, the parties agreed to stipulate into evidence 20 pages of medical reports, the plaintiff's recorded statement, and the nurses' reports.
4. The issue for determination is whether plaintiff sustained a compensable injury to her left arm on January 5, 1994.
5. Plaintiff's average weekly wage was $324.00 which yields a weekly compensation rate of $216.01.
* * * * * * * * * * *
The Full Commission adopts the Findings of Fact found by the Deputy Commissioner, as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 47 year old female with a ninth grade education. The plaintiff had been employed at defendant-employer for seven years.
2. On January 5, 1994, the plaintiff was working as a belt captain which required the plaintiff to carry in her left hand a list of items to be pulled for a delivery salesman. The plaintiff walked up and down a conveyor belt that fed into the back of the delivery truck. The plaintiff occasionally helped lift boxes of crackers, potato chips, and other snack food items into the conveyor belt. These boxes weighed fifteen pounds or less.
3. While working on January 5, 1994, the plaintiff experienced pain in her left arm when she extended her arm. The plaintiff went to the plant nurse where she reported that she was calling out orders and experienced a catch or cramp in her left arm.
4. The plaintiff did not experience an accident or unusual occurrence.
5. On January 11, 1994, the plaintiff was referred by defendants to Dr. Stephen Naso of Carolina Hand Center. The plaintiff reported to Dr. Naso that she was holding her elbow or reaching and all of a sudden felt pain in her left elbow. Dr. Naso's examination was negative, and he advised the plaintiff that it was his opinion that her problem was not related to her work. Dr. Naso recommended that plaintiff go to her family doctor.
6. On or about January 17, 1994, plaintiff went to Carolina Health Care where she was seen by Dr. Allen Fein, who diagnosed plaintiff as having tendinitis left brachioradialis, carpal tunnel syndrome. Plaintiff reported to Dr. Fein that her job required heavy lifting. At that time, Dr. Fein authorized light duty work for two weeks and referred plaintiff to the Miller Orthopaedic Clinic.
7. On or about February 3, 1994, the plaintiff was seen by Dr. Boatright at the Miller Clinic. The plaintiff related to Dr. Boatright that her arm symptoms came from work. Dr. Boatright's examination revealed a large female in no acute distress with motor and sensory examination within normal limits except for mild carpal tunnel syndrome. Dr. Boatright found some lateral epicondylitis which he opined was atypical in its location. He authorized the plaintiff to continue regular work.
8. On March 1, 1994, plaintiff contacted Dr. Boatright to request a stay out of work. On March 4, 1994, Dr. Boatright examined the plaintiff and injected the lateral epicondyle, and continued to allow her to work. The plaintiff did not advise Dr. Boatright that she had not been working since January of 1994.
9. On April 12, 1994, the plaintiff reported to Dr. Boatright that she was considerably improved and was working. Dr. Boatright discharged the plaintiff from his care.
10. On or about August 18, 1994, the plaintiff sought medical treatment at Abby Place Medical Center, where she was assessed as having mild lateral epicondylitis. The plaintiff related to the doctor a history of bilateral epicondylitis. On September 14, 1994, the doctor noted no significant findings and on October 13, 1994, further noted a component of exaggeration of symptoms by the plaintiff.
11. Only Dr. Fein related any of plaintiff's problems to her work, and then only to heavy lifting at work. However, there is no evidence in the record to support plaintiff's assertion to Dr. Fein that she performed heavy lifting of boxes weighing 75 pounds. To the contrary, evidence in the record demonstrates that plaintiff performed only occasional lifting, and that when she did lift snack orders, the items lifted most frequently weighed from one to five pounds, with no boxed items over fifteen pounds. Therefore, to the extent that Dr. Fein's opinion is based upon this inaccurate description of plaintiff's duties, his opinion is specifically rejected.
12. None of the doctors who treated the plaintiff after the incident on January 5, 1994 authorized plaintiff to remain out of work.
13. The competent medical evidence in the record supports a finding that plaintiff's condition was due to causes other than her employment.
14. From January 14, 1994 to March 7, 1994 and from August 23, 1994 until early October of 1994, the plaintiff was out of work and received short-term disability compensation through an employer-funded program.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff bears the burden of proving the existence of the compensable claim. There is no evidence that plaintiff sustained an accident on January 5, 1994; and further, there is no medical evidence to support plaintiff's contention that her left elbow condition is related to her employment.
2. N.C. GEN. STAT. § 97-53 (13) requires a claimant to prove the existence of a compensable occupational disease must show: (1) the disease must be characteristic of a trade or occupation, (2) the disease is not an ordinary disease of life to which the public is equally exposed outside of the employment, and (3) there must be a proof of causation, i.e., proof of a causal connection between the disease and the employment. Hansel v. ShermanTextiles, 304 N.C. 44, 283 S.E.2d 101 (1981).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
 S/ ______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ DIANNE C. SELLERS